

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-14-00198-CV

IN RE D.A.

----------

ORIGINAL PROCEEDING
TRIAL COURT NO. 324-410099-06

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

In four issues, Relator D.A. asks this court to discharge her from her commitment for contempt. We previously ordered that Relator be released on bond pending the outcome of this proceeding, and we now conditionally grant relief.

---

[1]*See* Tex. R. App. P. 47.4.

## II. Background

Relator and her ex-husband, one of the real parties in interest (RPI), were appointed joint managing conservators of their daughter in December 2012. In the order, RPI was given, among other rights, the exclusive rights to designate the child's primary residence and to receive $150 per week in child support, $180.24 per month as cash medical support, and 50% of unreimbursed health care expenses from Relator. Child support payments were to go through the Texas Child Support Disbursement Unit. The order warned that failure to obey could result in contempt of court and that a finding of contempt "MAY BE PUNISHED BY CONFINEMENT IN JAIL FOR UP TO SIX MONTHS, A FINE OF UP TO $500 FOR EACH VIOLATION, AND A MONEY JUDGMENT FOR PAYMENT OF ATTORNEY'S FEES AND COURT COSTS." The trial court also ordered Relator to pay $3,000 in attorney's fees for RPI's attorney.

On March 15, 2013, RPI filed a motion for enforcement and order to appear, alleging that Relator had failed to pay child support twenty-two times from October 5, 2012 to March 1, 2013, resulting in total arrearages of $1,350; that she had failed to pay cash medical support six times from Oct. 1, 2012 to March 1, 2013, resulting in total arrearages of $1,081.44; that she had failed to pay 50% of an unreimbursed health care bill that totaled $2,160; and that she had failed to pay the ordered $3,000 in attorney's fees. RPI asked that Relator be confined in county jail until she complied with the court's orders; that for each violation, she be held in contempt, jailed for up to 180 days, and fined up to $500;

and that each period of confinement run and be satisfied concurrently. The court heard the motion on May 21, 2013.

On September 13, 2013, the trial court entered an order finding that Relator had failed to pay and had had the ability to pay periodic medical support payments on January 1, 2013; February 1, 2013; and March 1, 2013; and to pay child support on December 21, 2012; December 28, 2012; January 4, 2013; January 11, 2013; January 18, 2013; January 25, 2013; February 1, 2013; February 8, 2013; February 15, 2013; February 22, 2013; and March 1, 2013. The trial court confirmed an arrearage of $8,542.93 as of May 21, 2013, which included the unpaid child support and medical support, the unreimbursed health care expenses, and the balance owed on the "previously confirmed" arrearages for attorney's fees and interest on those arrearages. It found Relator in contempt for not making child support payments on the eleven occasions set out above and for not making periodic medical support payments on January 1, 2013; February 1, 2013; and March 1, 2013. It ordered her committed to the Tarrant County Jail for 180 calendar days for each violation, to be served concurrently, for a total of 180 calendar days. It then suspended the commitment order and put Relator on community supervision for ten years. As a condition of community supervision, Relator was to pay RPI $150 per week in child support starting May 24, 2013, $180.24 per month in medical support starting June 1, 2013, and $200 per month in arrearages starting June 1, 2013. The new order again warned

3

about contempt for noncompliance and assessed attorney's fees and court costs against Relator in the amount of $4,171.

On January 17, 2014, the other real party in interest in this case, the Domestic Relations Office (DRO), filed a motion to revoke Relator's community supervision, alleging, among other things, that Relator had violated the terms and conditions of her community supervision by failing to pay child support on September 20, 2013; September 27, 2013; October 4, 2013; October 11, 2013; October 18, 2013; October 25, 2013; November 1, 2013; November 8, 2013; November 15, 2013; November 29, 2013; December 6, 2013; and December 13, 2013; by failing to pay monthly medical support on October 1, 2013, and November 1, 2013; by failing to pay unreimbursed health care expenses resulting in an arrearage of $242.50 as of September 24, 2013; by failing to make periodic arrearage payments on October 1, 2013, and November 1, 2013; and by failing to report to her community supervision counselor in September 2013. A warrant was issued for Relator's arrest on January 17, 2014. Relator was served with the warrant and arrested on February 15, 2014; her bond was executed the next day, and her counsel was appointed on February 18.

Relator filed a plea to the jurisdiction, special exceptions,[2] and an answer to the motion to revoke, arguing that her right to due process was violated under

_____

[2]The DRO waived some of the paragraphs in its motion to revoke in response to Relator's special exceptions, but it did not waive any of the ones set out above.

4

family code section 157.215(a) when the trial court issued an ex parte warrant for her arrest without giving her notice and opportunity to be heard before the arrest. She also filed a motion for continuance because she was suffering from a shingles outbreak and because she could not procure the testimony of a witness vital to her defense—her terminally ill father—and needed to obtain his testimony through his deposition on written questions. The court reset the hearing to May 27, 2014.

At the hearing, the trial court denied Relator's plea to the jurisdiction. The DRO's witnesses—Relator's community supervision counselor and RPI—testified that Relator had not paid child support on the dates set out in the motion to revoke—September 20 and 27, 2013; October 4, 11, 18, and 25, 2013; November 1, 8, 15, and 29, 2013; and December 6 and 13, 2013—and that she had not paid current monthly medical support on October 1, 2013, and November 1, 2013, or the $200 per month in arrearages on October 1, 2013, and November 1, 2013. The trial court admitted certified copies of the suspended contempt order and Attorney General's financial activity report of Relator's payments as of May 27, 2014.

Relator's counsel was appointed based on her representation of indigence, and the trial court waived Relator's court costs and filing fees based on her indigence. Relator testified that she had not had the ability to pay the amounts due on the dates set out in the motion to revoke; that she still did not have the ability to pay them; that she lacked any property that could have been sold,

5

mortgaged, or otherwise pledged to raise those funds; and that she had been unable to borrow the funds. Relator was evicted for past due rent on April 3, 2014, and her vehicle was repossessed on May 8, 2014. The parties stipulated that Relator's father had cancer.

Relator's father testified by deposition. He said that he had terminal stage 4 cancer, among other health problems; that he required full-time care; and that Relator had provided sixteen to eighteen hours of care for him daily since May 2013 except when he was in the hospital. The care provided by Relator included shaving and bathing him, maintaining his catheter, cooking, cleaning, washing his bedding, tending his wounds, administering his medications, driving him to all of his doctor's appointments, communicating with his doctors on his behalf, and managing his blood pressure.

At the conclusion of the hearing, the trial court revoked Relator's community supervision on the grounds pertaining to her failure to pay child support, periodic medical support, and periodic arrearages payments and pointed out to Relator that, notwithstanding her circumstances, she had never moved to modify the amount of child support that she owed.[3] It committed Relator to jail to

---

[3] If Relator had been able to afford an attorney, she might have been able to pursue a modification that would have allowed her to avoid the initiation of contempt proceedings and the subsequent revocation proceeding. However, the record reflects that Relator was managing full-time care for an elderly, dying parent while facing major financial setbacks and that she had a high school education; it seems unlikely that she would have been able to successfully pursue this option pro se, assuming that she had been aware of it.

6

serve the remainder of her 180-day sentence (177 days) on weekends so that Relator would have the weekdays to take her father to his medical appointments.[4]

### III. Discussion

In her first two issues, Relator argues that her current incarceration is void because her initial arrest and incarceration were made without notice and an opportunity to be heard and because of lack of proper courtroom identification. In her third issue, Relator argues that the trial court erred by rejecting her inability-to-pay defense, and in her fourth issue, she argues that the commitment order violates due process because the trial court failed to consider options other than incarceration.

There is no adequate remedy by appeal if a trial court abuses its discretion when holding someone in contempt. *See In re Office of Att'y Gen. of Tex.*, 215 S.W.3d 913, 916 (Tex. App.—Fort Worth 2007, orig. proceeding). On review, we do not weigh the proof and determine whether it preponderates for or against the relator; we determine only whether the contempt order is void because the relator has been confined without a hearing or with no evidence of contempt to support her confinement. *Ex parte Chambers*, 898 S.W.2d 257, 259–60 (Tex. 1995) (orig. proceeding).

---

[4]Per Relator's counsel's request, we judicially notice that Relator's father died on June 28, 2014.

Relator was arrested under the family code sections providing that the DRO may file a verified motion alleging violations of terms and conditions of community supervision; that if the motion to revoke alleges a prima facie case of community supervision violation, the court may order arrest by warrant; and that the court shall hold a hearing not later than the third working day after the respondent is arrested, after which it can continue, modify, or revoke community supervision. *See* Tex. Fam. Code Ann. §§ 157.214–.216 (West 2014).

Relator was arrested, but she bonded out before the third working day under the statute, her community supervision was not revoked until after a hearing, and the hearing was continued at her request, giving her ample time to prepare for it. *Cf. Ex parte Sauser*, 554 S.W.2d 239, 241 (Tex. 1977) (orig. proceeding) (stating that order directing sheriff to immediately arrest relator and bring him to court for show-cause hearing did not provide due process because it gave insufficient notice with regard to time to prepare for the hearing); *Ex parte Herring*, 438 S.W.2d 801, 801, 803 (Tex. 1969) (orig. proceeding) (stating that committing a person to jail for contempt when he had no personal notice or knowledge of the show-cause hearing at which he was held in contempt violated due process); *Ex parte Bush*, 619 S.W.2d 298, 299–300 (Tex. Civ. App.—Tyler 1981, orig. proceeding) (holding that relator was deprived of due process when attachment order jailed relator to purge him of contempt without notice and a hearing first). Because we do not see how Relator's arrest warrant based on the verified affidavit is any different from the issuance of an arrest warrant in a

8

criminal case after a finding of probable cause, or how Relator was deprived of due process under the circumstances presented here prior to the hearing, we overrule her first issue. *See* Tex. Code Crim. Proc. Ann. art. 45.014 (West 2006).

With regard to Relator's second issue, Relator's community supervision counselor testified that he was familiar with Relator and identified her in the courtroom. He stated that Relator had been assigned to his case load since she was placed on community supervision and that he completed her initial briefing with regard to her reporting instructions, payments, and other terms and conditions of her community supervision in May 2013. He said that at the initial briefing, Relator indicated that she understood what was expected by the community supervision unit with regard to her actions going forward and what the potential consequences were if she did not comply with the terms and conditions of her community supervision. He further stated that when he briefed Relator, he required her to sign the back of the community supervision order to verify that it had been discussed with her.

RPI testified that he was the child's father, identified Relator by her full name, and stated that Relator had not made any of the payments listed in the motion to revoke. The trial court admitted certified copies of the suspended contempt order and Attorney General's financial activity report of Relator's payments as of May 27, 2014. Based on the foregoing, we conclude that the trial

court did not abuse its discretion by finding that Relator had been adequately identified, and we overrule Relator's second issue.

With regard to Relator's third issue, an obligor may plead as an affirmative defense to the violation of a condition of community supervision requiring payment of child support that she lacked the ability to provide support in the amount ordered; lacked property that could be sold, mortgaged, or otherwise pledged to raise the funds needed; attempted unsuccessfully to borrow the funds needed; and knew of no source from which money could have been borrowed or legally obtained. *See* Tex. Fam. Code Ann. § 157.008(c) (West 2014). The inability to pay child support is an affirmative defense that must be proved by a preponderance of the evidence. *See id.* § 157.006(b) (West 2014); *Ex parte Roosth*, 881 S.W.2d 300, 301 (Tex. 1994) (orig. proceeding).

Relator's testimony supported these grounds and more when she explained why she had been unable to pay child support on the dates listed in the revocation order and how she had been unable to secure any loans from friends, family, or third party sources. Her testimony was uncontroverted by any other witness: RPI and her community supervision counselor both testified that Relator had failed to pay, while Relator testified about her unemployment, her eviction, and the repossession of her vehicle. She and her terminally ill father testified about the care that she provided to him and why this had precluded her from working anywhere but home since she began caring for him full-time on May 15, 2013, when he was discharged from the hospital. No one testified or

10

presented any evidence that Relator had the ability to pay at the time the money was owed or at the hearing. *See In re Smith*, 354 S.W.3d 929, 931 (Tex. App.—Dallas 2011, orig. proceeding) (stating that relator conclusively proved his inability to pay the amount owed when his testimony addressed each of the four elements required by section 157.008(c) and the attorney general did not present any evidence to contradict this testimony or to show that relator had the ability to pay the money). Therefore, the record shows that Relator did not willfully violate the court's order and that she is entitled to relief on her third issue with regard to her inability-to-pay defense. *See Chambers*, 898 S.W.2d at 261 (stating that the involuntary inability to comply with an order is a valid defense that rebuts the willfulness element of contempt liability). We sustain Relator's third issue. Based on our resolution of Relator's third issue, we do not reach her fourth issue.

## IV. Conclusion

Having sustained Relator's third issue, we vacate the order of commitment. We order Relator released from the bond set by this court on June 20, 2014, and order her discharged from custody.

PER CURIAM

PANEL: MCCOY, GARDNER, and WALKER, JJ.

WALKER, J., concurs without opinion.

DELIVERED: August 14, 2014

11