# IN THE SUPREME COURT OF TEXAS

No. 19-1109

IN RE PAMELA JANSON, RELATOR

ON PETITION FOR MANDAMUS

### PER CURIAM

In this mandamus proceeding, Pamela Janson (Mother) argues an order holding her in criminal contempt is ambiguous and unenforceable. The court of appeals denied Mother's mandamus petition, but we agree with Mother and conditionally grant relief.

Mother and Richard Cheng (Father) (collectively, the parents) are joint managing conservators of their two children (Daughter and Son). Upon the parents' separation, the trial court entered an agreed order that included a section addressing the children's extracurricular activities. This section provided that (1) "Mother and Father shall place each child in one extracurricular activity at a time;" (2) the parents' "agreement as to which extracurricular activity shall be in writing;" (3) each parent, during his or her time of possession, will transport each child to the agreed-upon activities; (4) if the parent having possession is unable to do so, the parent will notify the other parent and make the child available so the other parent can transport the child; (5) each parent can independently choose to enroll the children in additional extracurricular activities, but the other parent can choose, "at their elective," whether to transport the child to such additional activities during that parent's time of possession; and (6) the parents will each pay one-half the costs of the children's extracurricular activities. At the end of this section, the order recited the

parents' acknowledgement and agreement that, "At the time of this agreement . . . [Son] is enrolled in baseball and [Daughter] is enrolled in Soccer."

After the agreed order became effective, Son completed his baseball season and Daughter completed her soccer season. Mother and Father then texted and emailed in an attempt to agree on other activities in which to enroll them. Both children were subsequently enrolled in tennis. Son was also subsequently enrolled in tae kwon do.

Father then decided to enroll Daughter in an indoor soccer league, which involved different teams, coaches, and players than the outdoor soccer league in which Daughter was enrolled when the agreed order became effective. Father informed Mother that he was enrolling Daughter in the indoor soccer league and requested that Mother transport Daughter to her practices and games when Mother had possession, but Father acknowledged that Mother was not "legally obligated" to do so. Both Mother and Father apparently believed this new soccer league was an "additional" activity to which Mother could transport Daughter "at [her] elective."

After Mother failed to transport Daughter to some of her indoor soccer activities, Father apparently came to understand the agreed order differently. Father's attorney sent a letter to Mother demanding that she transport Daughter to her indoor soccer activities. Father also began sending Mother text messages and emails, threatening to file an enforcement action and hold Mother in contempt if she failed to comply.

After Mother continued to fail to transport Daughter to some of her indoor soccer activities, Father filed an enforcement action alleging Mother violated the agreed order. Specifically, Father alleged that because the agreed order identified soccer as Daughter's agreed-upon activity, the order required Mother to (1) transport Daughter to her soccer activities, or (2) if she was unable to

2

do so, notify Father that she was unable to and (3) make Daughter available so Father could transport her. Father alleged that Mother did none of these three things for sixteen different soccer activities, resulting in forty-eight separate violations of the agreed order. Father also alleged that Mother failed to transport Son to one of his tae kwon do activities, resulting in three additional violations.

After a hearing at which Mother and Father testified, the trial court signed an enforcement order finding Mother in contempt for the forty-eight violations of the agreed order related to soccer. The enforcement order committed Mother to jail for 180 days but suspended the commitment and placed Mother on two years' deferred adjudication for each violation, to run concurrently. It also ordered Mother to pay $1,500 of Father's attorney's fees. The trial court based its violation findings, in part, on the parents' acknowledgement in the agreed order that Daughter was enrolled in soccer when the agreed order was entered. Because neither party produced a written agreement establishing that Daughter had subsequently enrolled in a new agreed-upon activity, the trial court reasoned that soccer remained Daughter's agreed-upon activity, rather than an "additional" activity to which Mother could choose to transport Daughter at Mother's "elective."

Based on this reasoning, the trial court found that Mother violated the agreed order by failing to either transport Daughter to her soccer activities or give Father notice and allow him to transport her. The trial court found no violations with respect to Son, however, because the agreed order specified that Son was enrolled in baseball and neither party produced a subsequent writing changing Son's agreed-upon activity to tae kwon do.

Notably, the trial court also found that the agreed order's provision requiring the parents to agree in writing to "place each child in one extracurricular activity at a time" was too ambiguous

3

to be enforced by contempt. Specifically, the court concluded that the order did not make clear whether each parent could enroll each child in a separate agreed-upon activity, or whether the parents had to agree upon one activity per child. The court thus modified the order to clarify that "Mother may place each child in one extracurricular activity at a time and Father may place each child in one extracurricular activity at a time. The designation of the extracurricular activity shall be in writing."

Mother asserts that the agreed order is too ambiguous to be enforced by contempt because (1) it specifies only that Daughter was enrolled in soccer *at the time* of the agreed order, not that soccer would always remain Daughter's agreed-upon activity until changed by a subsequent writing; (2) it fails to explain how or when Daughter's activity would no longer be soccer and, instead, reasonably suggests that Daughter ceased being "enrolled in" soccer when the outdoor soccer season ended; and (3) the trial court's finding necessarily relied on the provision that the trial court itself found too ambiguous to be enforced by contempt. We agree with Mother.

"A criminal contempt conviction for disobedience to a court order requires proof beyond a reasonable doubt of: (1) a reasonably specific order; (2) a violation of the order; and (3) the willful intent to violate the order." *Ex parte Chambers*, 898 S.W.2d 257, 259 (Tex. 1995) (orig. proceeding). Because contempt orders are not appealable, they are reviewable only by writ of mandamus or habeas corpus. *In re Long*, 984 S.W.2d 623, 625 (Tex. 1999) (orig. proceeding). When the contemnor is not jailed, the proper vehicle to challenge a contempt order is a writ of mandamus, which requires the contemnor to show that the trial court abused its discretion. *Id*.

Because criminal contempt is a harsh sanction, we have strictly required clarity in the underlying court orders. *See Ex parte Slavin*, 412 S.W.2d 43, 44 (Tex. 1967) (orig. proceeding)

4

("It is an accepted rule of law that for a person to be held in contempt for disobeying a court decree, the decree must spell out the details of compliance in clear, specific and unambiguous terms so that such person will readily know exactly what duties or obligations are imposed upon him."); *see also Ex parte Glover*, 701 S.W.2d 639, 640–41 (Tex. 1985) (orig. proceeding) (holding that an order that failed to specify whether a party owed simple or compound interest could not support a contempt finding). A trial court necessarily abuses its discretion if it holds a person in contempt for violating an ambiguous order. *See Long*, 984 S.W.2d at 626. To avoid such ambiguity, the order allegedly violated "must spell out the details of compliance in clear, specific and unambiguous terms so that such person will readily know exactly what duties or obligations are imposed upon him." *Slavin*, 412 S.W.2d at 44. The order's interpretation may "not rest upon implication or conjecture." *Id.* (quoting *Plummer v. Superior Court*, 124 P.2d 5, 8 (Cal. 1942)). Rather, the alleged violation "must be directly contrary" to the order's express terms. *Ex parte Blasingame*, 748 S.W.2d 444, 446 (Tex. 1988). If the order's "interpretation requires inferences or conclusions about which *reasonable* persons might differ," it cannot support a contempt judgment. *Chambers*, 898 S.W.2d at 260. But any alternative constructions must be reasonable: "The order need not be full of superfluous terms and specifications adequate to counter any flight of fancy a contemnor may imagine in order to declare it vague." *Id.* (citing *Ex parte Johns*, 807 S.W.2d 768, 774 (Tex. App.—Dallas 1991, orig. proceeding)).

Under this standard, the agreed order at issue here cannot support the contempt order because it does not "set forth the terms of compliance in clear, specific, and unambiguous terms." *Ex parte Acker*, 949 S.W.2d 314, 317 (Tex. 1997) (orig. proceeding) (quoting *Chambers*, 898 S.W.2d at 260). Although the agreed order states that Daughter was enrolled in soccer at the time

5

*of the agreed order*, it is silent as to Daughter's agreed-upon activity at the time *of the alleged violations*. "The allegedly contemptuous acts must be directly contrary to the *express terms* of the court order." *Blasingame*, 748 S.W.2d at 446 (emphasis added). In finding Mother in contempt, the trial court necessarily inferred that the children's agreed-upon activities would remain as stated until changed by a subsequent written agreement, which is why the court found violations as to Daughter's soccer activity but not as to Son's tae kwon do activity. Yet the agreed order never expressly addresses that question. *Cf. Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 632 (Tex. 2018) ("A contract that is silent on a matter cannot speak to that matter with unmistakable clarity . . . ."). As Father himself concedes, Daughter stopped participating in outdoor soccer after the trial court entered the agreed order and began participating in tennis until Father unilaterally enrolled her in indoor soccer.

The agreed order is, at best, ambiguous as to whether soccer remained Daughter's agreed-upon activity at the time of the alleged violations. It is "not beyond the realm of reason" that Mother and Father intended to agree that Daughter's agreed-upon activity was soccer only until the outdoor soccer season ended or she was enrolled in another activity. *Acker*, 949 S.W.2d at 317. Indeed, Father initially agreed that Mother was not obligated to take Daughter to her indoor soccer activities, conceding that indoor soccer was an "additional" activity to which Mother could transport Daughter "at [Mother's] elective." Father now argues that Mother's interpretation is unreasonable, even though they both previously interpreted the agreed order exactly that way. Because Mother could reasonably have understood that soccer was Daughter's agreed-upon activity only until the outdoor soccer season ended, and the agreed order does not clearly establish that soccer was Daughter's agreed-upon activity at the time of the alleged violations, the agreed

6

order was not sufficiently clear to support the trial court's contempt finding. *See Chambers*, 898 S.W.2d at 260.

Moreover, the trial court found the agreed order's provision requiring the parents to agree in writing to "place each child in one extracurricular activity at a time" too ambiguous to be enforced by contempt, and thus modified the order to clarify that provision. Because no other provision imposed a duty on Mother with respect to soccer at the time of the alleged violations, any violations necessarily involved violations of the provision the trial court found too ambiguous to be enforced by contempt.

Because a trial court abuses its discretion by holding a person in criminal contempt for violating an ambiguous order, and because Mother has no appellate remedy, we hold Mother is entitled to her requested relief. Pursuant to Texas Rule of Appellate Procedure 52.8(c), without hearing oral argument, we conditionally grant mandamus relief directing the trial court to vacate its order holding Mother in contempt. Our writ will issue only if the court fails to comply.

Opinion delivered: December 18, 2020