In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-18-00253-CV
_____


IN RE KRISTEN ANN MILLER

_____

Original Proceeding
418th District Court of Montgomery County, Texas
Trial Cause No. 16-03-03293-CV
_____

MEMORANDUM OPINION

In this original mandamus proceeding, the Relator (Kristen Ann Miller) argues that an associate family law judge abused her discretion by holding Kristen in contempt, sentencing her to one year in jail, and then, rather than requiring her to serve the sentence, placing her on community supervision. *See* Tex. Gov't Code Ann. § 22.221(b)(3) (West Supp. 2017) (authorizing appeals courts to issue writs of mandamus against associate judges of a district or county court that are appointed under the Family Code); *see also* Tex. Fam. Code Ann. § 157.165 (West 2014) (allowing judges in family law cases to probate orders of contempt and place individuals held in contempt on community supervision); Tex. R. App. P. 52

(procedure for filing original proceedings in appellate courts). According to Kristen, the trial court abused its discretion:

- by finding that she did not surrender the children to the Real Party in Interest, Scott Timothy Miller, and by holding her in contempt for failing to *surrender* all of her children to Scott on four occasions when the order allowed Scott to gain possession of them;

- by finding that Kristen willfully failed to *surrender* the children to Scott and holding her in contempt for failing to have all of the children at her residence on one of the days that the order allowed Scott to gain possession of them; and

- by assessing a punishment exceeding the infractions that the trial court found Kristen committed by violating the trial court's orders governing Kristen's and Scott's rights to possess their children.

Background

Scott and Kristen, who have four children, divorced in 2017. Under the possessory order accompanying the final decree, Kristen had to *surrender* the children to Scott during his possessory periods at her residence. In March 2018, the trial court modified the periods that are relevant to Scott's possession in several ways. Relevant to the circumstances of this original proceeding, the modified order required Kristen to surrender the children to Scott at five o'clock p.m. on the weekends that Scott had the right to have the children in his possession, and at five o'clock p.m. every Thursday during the year.[1] Additionally, the modified order

---

[1] The appendix to Kristen's petition for mandamus includes the agreed temporary possession order, signed in November 2016 before Scott and Kristen

2

states that the requirements not changed in the modified order are to continue in effect. Thus, the modified order also required Kristen (1) to surrender the children to Scott at her residence, (2) to surrender the children to Scott if a child's birthday fell during a period in which Kristen had them in her possession beginning at six o'clock p.m., and (3) to surrender the children to Scott on Wednesday at two o'clock p.m. in even-numbered years when the children were on spring break.

In March 2018, Scott moved to enforce the modified order, asking that the trial court hold Kristen in criminal and civil contempt because she failed to surrender three of the children to him on five separate occasions. Scott alleged, and the trial court found, that on five occasions in March 2018—March 8, March 14, March 22, March 23, and March 26—Kristen had violated the trial court's orders that govern her obligation to surrender the children to Scott. The trial court sentenced Kristen to serve ninety days in jail for each of the violations, and to serve the sentences concurrently. Then, the trial court suspended Kristen's sentences and placed Kristen

divorced. However, the documents Kristen included in her appendix do not include the trial court's March 2018 temporary order, and in some situations the March 2018 order slightly changed the hour that Kristen was to surrender the children to Scott. In any event, Scott's motion to enforce and the trial court's order finding Kristen in contempt reveal the date and hour the order required Kristen to surrender the children to Scott, and Kristen did not claim in the hearing and has not argued in this original proceeding that Scott's motion failed accurately to describe the relevant hour that the trial court's orders required Kristen to surrender the children to Scott. Thus, we will assume that the March 2018 order required Kristen to surrender the children on the hour as reflected by that order.

on community supervision for one year if Kristen "surrender[s] the children to [Scott] pursuant to all Court Orders[.]"

Mandamus Review of Contempt Judgment

In this original proceeding, Kristen challenges the evidence supporting the trial court's finding that she violated the requirements in the relevant orders that she *surrender* the children to Scott. The term *surrender* is not defined in either the final decree or in the agreed temporary order that modified the decree.

"To be entitled to mandamus relief, a relator must demonstrate (1) the trial court clearly abused its discretion, and (2) the relator has no adequate remedy by appeal." *In re Reece*, 341 S.W.3d 360, 364 (Tex. 2011) (orig. proceeding). A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it fails to analyze the law correctly or apply the law correctly to the facts. *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding). To determine whether a party has an adequate remedy by appeal, the appellate court asks whether "any benefits to mandamus review are outweighed by the detriments." *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136 (Tex. 2004) (orig. proceeding).

Mandamus is available to challenge an order of contempt not involving confinement. *In re Reece*, 341 S.W.3d at 370. Kristen seeks mandamus relief because she is neither confined nor currently under threat of confinement. "A

4

contempt order is void if it is beyond the power of the court or violates due process." *In re Office of Attorney Gen.*, 422 S.W.3d 623, 628 (Tex. 2013) (orig. proceeding). "If the trial court's contempt order in this case is not void, there was no abuse of discretion." *Id.*

"A criminal contempt conviction for disobedience to a court order requires proof beyond a reasonable doubt of: (1) a reasonably specific order; (2) a violation of the order; and (3) the willful intent to violate the order." *Ex parte Chambers*, 898 S.W.2d 257, 259 (Tex. 1995) (orig. proceeding). "The involuntary inability to comply with an order is a valid defense to criminal contempt, for one's noncompliance cannot have been willful if the failure to comply was involuntary." *Id.* at 261.

As the party who filed this proceeding, Kristen must establish that her noncompliance with the trial court's orders was not willful or that she was unable to comply. *See id.* We do not weigh the evidence in reviewing the trial court's ruling; instead, we determine only if there is no evidence to legitimize the trial court's finding of contempt. *Id.* at 261-62.

No Evidence to Support Contempt Findings

Kristen raises two no evidence claims in her petition seeking mandamus relief. In her first issue, Kristen contends that the trial court had no evidence before it supporting its rulings holding her in contempt for failing to *surrender* the children

at her residence on March 8, March 14, March 22, and March 23. In her second issue, Kristen argues that no evidence supports the trial court's ruling holding her in contempt even though she does not dispute that her two youngest children were not at her residence on March 26 when Scott arrived to pick them up.

Scott and Kristen were the only witnesses who testified in the contempt hearing. The facts involving Kristen's conduct in *surrendering* the children to Scott on the dates at issue are undisputed. In the hearing, the testimony shows that Scott appeared at Kristen's residence on the four dates addressed in Kristen's first issue. Scott and Kristen agreed that during each of these occasions, Kristen put the children outside the front door and locked it. Yet on each of these four occasions, only the oldest child complied with the demand Scott made of his children directing them to get into his car. Scott's three youngest children refused his demand, and they walked behind the house and he left. Scott testified that, to his knowledge, Kristen never told the children they did not have to go with him.

Kristen testified that she had encouraged the children to go with Scott and that she had not encouraged them to refuse his requests. She explained that on the first two occasions in March that were the subject of the motion, she sent a text message to Scott after he left without taking the three younger children, asking if he intended to return for them, but that he did not reply.

6

Based on the evidence admitted in the hearing, there is no evidence supporting the trial court's ruling that Kristen failed to *surrender* the children to Scott on March 8, March 14, March 22, or March 23. Kristen left them outside the house, and by doing so, she subjected the children to Scott's authority over them. Nothing in the record shows that Kristen encouraged the children not to go with Scott. Because no evidence supports the trial court's finding that Kristen willfully failed to *surrender* the children to Scott, the trial court's order holding her in contempt based on her alleged failure to *surrender* the children to Scott on March 8, March 14, March 22, and March 23 is void. *See Chambers*, 898 S.W.2d at 259-60. We sustain issue one.

In issue two, Kristen argues that no evidence supports the trial court's finding that she *willfully* failed to surrender the children to Scott on March 26. The evidence in the hearing showed that on March 26 when Scott arrived at Kristen's residence, Scott's oldest daughter and oldest son were inside but that his youngest daughter and youngest son were at soccer practice. Scott agreed in the hearing that he knew there was a soccer practice that day, and Kristen testified that based on past practices, she had tried to resolve scheduling conflicts with Scott by contacting him through text messages or with emails. According to Kristen, she knew that the practice conflicted with the requirement that she surrender the children at her residence, and she testified that she sent the information to Scott as soon as she could, but she did not testify that

7

he contacted her or agreed to informally alter the order's requirements after she forwarded the information to him.

It was undisputed that Scott's two youngest children were not at Kristen's residence at six o'clock p.m. on March 26 when Scott arrived to pick them up. It is also undisputed that Kristen never obtained Scott's agreement allowing her to deviate from the letter of requirement in the court's orders requiring Kristen to surrender the children at her residence. Thus, we conclude that the record contains evidence showing that Kristen violated the letter of the trial court's order by failing to have the two younger children at her residence, where the relevant orders contemplated the change in possession would occur.

Kristen argues there is no evidence of *willful* noncompliance because when she allowed the two youngest children to go to soccer practice, she relied on a past practice where Scott agreed on one prior occasion to allow the children to attend a soccer practice even though the trial court's possession orders required Kristen to have them at her residence when he came to pick them up. Even so, "[n]oncompliance with an unambiguous order of which one has notice will ordinarily raise an inference that the noncompliance was willful." *Id.* at 261. Under the circumstances here, the trial court could reasonably find that Kristen *willfully* allowed the two children to attend a soccer practice even though she knew that Scott had not agreed to alter the express requirements of the trial court's orders as to the

8

change in possession scheduled for March 26. Given the limited scope of our review of a contempt order, and based on the evidence the trial court considered, we hold that it acted reasonably by holding Kristen in contempt because she violated the court's order by failing to have her two youngest children at her residence on March 26.

Although we might speculate about whether the trial court would have held Kristen in contempt had the March 26 violation been the sole violation at issue in this proceeding, we cannot do so in this case because the trial court's order of contempt lists each violation and punishment separately. Under such circumstances, the invalid portions of the trial court's order does not mean that all of the rulings in the order are void. *See Ex parte Linder*, 783 S.W.2d 754, 758 (Tex. App.—Dallas 1990, orig. proceeding). Based on Kristen's conduct on March 26, we conclude that the evidence supports the single ninety-day sentence. *See generally* Tex. Fam. Code Ann. § 157.165. We overrule issue two.

## Excessive Sentence

In issue three, Kristen argues that the punishment the trial court assessed exceeds the infraction she committed. But Kristen did not object to her sentence on that basis when the trial court pronounced sentence. Kristen also cites no caselaw or authorities to support her argument that the punishment imposed on her for her conduct was excessive.

The legislature has authorized trial courts to sentence individuals to jail for a period of six months upon a finding of contempt. *See* Tex. Gov't Code Ann. § 21.002(b) (West 2004). So, Kristen's sentence of three months in the county jail is well within the statutory range of punishment that is permissible by statute in cases involving contempt. *Id*. Trial courts are also authorized to place individuals found guilty of contempt on community supervision and to suspend the commitment for violating the terms of an order rendered under Title 5 of the Family Code, which includes the types of orders at issue here. *See* Tex. Fam. Code Ann. § 157.165 (authorizing trial courts to probate contempt orders); § 153.255 (West 2014) (showing that agreed possession orders are under Title 5).

Kristen has not shown in this proceeding that the trial court abused its discretion by imposing a ninety-day jail sentence, suspending the sentence, and placing her on community supervision for a period of one year. We overrule Kristen's third issue.

## Conclusion

We conclude that the trial court abused its discretion by finding that Kristen violated the trial court's possession orders by failing to surrender the children that are the subject of the orders on March 8, March 14, March 22, and March 23. We also conclude that Kristen lacks an adequate remedy through an appeal to correct the rulings finding her in contempt. For these reasons, we conditionally grant mandamus

relief on those rulings, and we remand the case to the trial court with instructions that it vacate that part of its order. We are confident that the trial court will comply with the Court's ruling and vacate that portion of its order finding Kristen in contempt for her conduct on March 8, March 14, March 22, and March 23. The writ will issue only if the trial court fails to comply. All other relief that Kristen requested in her petition is denied.

PETITION CONDITIONALLY GRANTED IN PART.

_____
HOLLIS HORTON
Justice

Submitted on July 9, 2018
Opinion Delivered August 30, 2018

Before Kreger, Horton and Johnson, JJ.

11

CONCURRING AND DISSENTING OPINION

I fully agree with the majority opinion as to its decision to vacate the contempt findings pertaining to March 8, 14, 22, and 23.

Nevertheless, I respectfully dissent because I would also vacate the trial court's contempt finding relating to the alleged non-compliance on March 26. Although Kristen's two youngest children were not at her residence on March 26 when Scott arrived to pick them up, as the majority discusses, the mandamus evidence indicates that the March 26 soccer practice was rescheduled unexpectedly by the coaches and not by Kristen because the lights were not working at the soccer field. The evidence also established that Scott and Kristen had resolved previous scheduling conflicts through text or email messages, that Kristen texted information to Scott about the March 26 soccer practice as soon as she could, and that Scott was informed about the last-minute soccer practice. Although Kristen did not present a response to her text wherein Scott expressly agreed to "informally alter the order's requirements," Kristen established that her noncompliance was not willful. Considering the facts in our record that relate to this alleged violation, I conclude there is no evidence to legitimize the trial court's finding of contempt. *Ex parte Chambers*, 898 S.W.2d 257, 261-62 (Tex. 1995) (orig. proceeding).

1

_____
LEANNE JOHNSON
Justice

Concurrence and Dissent Delivered
August 30, 2018

2