# IN THE SUPREME COURT OF TEXAS

═══════════════

No. 20-0363

═══════════════

IN RE SHELLEY LUTHER, RELATOR

═══════════════

ON PETITION FOR WRIT OF HABEAS CORPUS

═══════════════

**PER CURIAM**

In this original habeas corpus proceeding, Relator Shelley Luther seeks relief from the trial court's Judgment of Contempt and Order of Confinement ("Contempt Judgment"), holding Luther and her solely owned business—a cosmetology salon—guilty of criminal and civil contempt. Luther was jailed and the salon was fined for violating the trial court's temporary restraining order, which required them to cease and desist from operating the salon for in-person services "in violation of State of Texas, Dallas County, and City of Dallas emergency regulations related to the COVID-19 pandemic." Luther petitioned this Court, arguing she was illegally restrained because the temporary restraining order was void and unconstitutional. We ordered her released from confinement on personal bond pending the final disposition of the case. We now conclude that the temporary restraining order failed to set forth the conduct required and the legal basis for its issuance in clear, specific, and unambiguous terms. Accordingly, we hold that the temporary restraining order was void, making the Contempt Judgment based on that order void as well.

**I**

In March 2020, Governor Greg Abbott issued a disaster proclamation for all Texas counties based on the COVID-19 pandemic.[1]  Over the course of the following weeks, the Governor issued a flurry of lengthy and detailed executive orders designed to mitigate COVID-19's spread.

The first of these, Executive Order GA-08,[2] meaningfully changed Texans' day-to-day activities.  While "critical infrastructure" and "essential services" remained fully operational, many businesses that did not qualify as "essential services" did not.  GA-08 also discouraged in-person patronage of restaurants, bars, and gyms, temporarily closed schools, and directed Texans to "avoid social gatherings in groups of more than 10 people."[3]

A dozen more executive orders related to COVID-19 issued in the weeks between GA-08's issuance on March 19, 2020, and April 28, 2020, the date on which the City of Dallas sued Luther and her salon.  These executive orders referenced previous executive orders and incorporated detailed federal guidelines that identified the categories of "essential services" that were permitted to remain fully operational.

For example, Executive Order GA-16, issued eleven days before the City of Dallas sued, defined "essential services" to consist of "everything listed by the U.S. Department of Homeland Security (DHS) in its Guidance on the Essential Critical Infrastructure Workforce, Version 2.0 or any subsequent version, plus religious services conducted in churches, congregations, and houses

---

[1] The Governor of the State of Tex., Proclamation 41-3720 (issued Mar. 13, 2020), 45 Tex. Reg. 2094, 2094–95 (2020).

[2] The Governor of the State of Tex., Exec. Order GA-08 (issued Mar. 19, 2020), 45 Tex. Reg. 2271, 2271 (2020).

[3] *Id.*

of worship."[4]  Executive Order GA-16 noted other "essential services" could be added at the direction of the Texas Division of Emergency Management.[5]  It also reflected that certain businesses that did not meet the then-current definition of "essential services" would nevertheless be permitted to reopen within days.[6]  The same day, Governor Abbott created a Strike Force to advise on the re-opening of Texas businesses.[7]  Thus, the regulations in place during March and April 2020 were not only complex and in flux, but the more recent executive orders also reflected a shift in focus to reopening of Texas businesses across a variety of sectors in compliance with Centers for Disease Control and Prevention best practices.[8]

While the Governor issued COVID-19-related executive orders in rapid succession, Texas counties and cities were issuing their own.  From mid-March to April 28, the Dallas County Judge issued more than twenty orders,[9] and the City of Dallas contributed another four sets of regulations.[10]  Recognizing the potential for conflicting regulations, Governor Abbott's executive orders eventually included provisions expressly superseding any conflicting order issued by local officials in response to COVID-19.[11]

---

[4] The Governor of the State of Tex., Exec. Order GA-16 (issued Apr. 17, 2020), 45 Tex. Reg. 2760, 2760 (2020).

[5] *Id.*

[6] *Id.* at 2760–61.

[7] The Governor of the State of Tex., Exec. Order GA-17 (issued Apr. 17, 2020), 45 Tex. Reg. 2761, 2762–63 (2020).

[8] *See id*.

[9] *Previous County Orders Issued by Judge Jenkins—Coronavirus Outbreak*, DALLAS COUNTY, https://www.dallascounty.org/covid-19/past-orders/judge-past-orders.php (last visited Apr. 1, 2021).

[10] *Coronavirus (COVID-19): News and Information*, CITY OF DALLAS, https://dallascityhall.com/Pages/coronavirus-media-releases.aspx (last visited Apr. 1, 2021).

[11] *See, e.g.*, The Governor of the State of Tex., Exec. Order GA-14 (issued Mar. 31, 2020), 45 Tex. Reg. 2369, 2370 (2020).

Against this rapidly changing landscape, the City of Dallas sued Luther and her salon, S&B Hot Mess Enterprises, LLC d/b/a Salon A La Mode, on April 28, 2020. The City alleged Defendants were operating the salon in violation of COVID-19 regulations. The trial court entered a temporary restraining order on the day the City sued, prohibiting Defendants from operating the salon "in violation of State of Texas, Dallas County, and City of Dallas emergency regulations." In relevant parts, the order states:

> It clearly appears from the facts set forth in Plaintiff's Original Petition that unless Defendants are immediately ordered to cease and desist from operating the Salon A La Mode business for in-person services located at 7989 Belt Line Road, Ste. 139-1C, Dallas, Texas in violation of State of Texas, Dallas County, and/or City of Dallas emergency regulations related to the COVID-19 pandemic, that Defendants will continue to commit the foregoing acts before notice can be given and a hearing is set on Plaintiff's motion for temporary injunction.
> . . .
>
> **IT IS THEREFORE ORDERED** that Defendants are immediately ordered to cease and desist from operating the Salon A La Mode business for in-person services located at 7989 Belt Line Road, Ste. 139-1C, Dallas, Texas in violation of State of Texas, Dallas County, and City of Dallas emergency regulations related to the COVID-19 pandemic[.]

The trial court set a temporary injunction hearing for May 11, 2020, but convened the parties earlier, on May 5, to hear the City's motion to show cause why Defendants should not be held in contempt for violating the April 28 temporary restraining order.[12] At the show-cause hearing, the City presented evidence that Luther's salon was conducting in-person services—haircuts and manicures—after she was served with the temporary restraining order. Luther conceded that she had notice of the temporary restraining order and testified that she believed she was complying with applicable Centers for Disease Control regulations insofar as she had altered

---

[12] Defendants appealed the temporary restraining order, but that appeal was dismissed as moot after Governor Abbott issued a new executive order that expressly allowed cosmetology salons to reopen. *S&B Hot Mess Enters., LLC v. City of Dallas*, No. 05-20-00502-CV, 2020 WL 3989499, at *2 (Tex. App.—Dallas July 15, 2020, no pet.) (mem. op.).

salon operations by limiting the number of workers and customers inside the salon, requiring them to wear masks, enforcing distancing in waiting areas, and adding sanitizer stations.

At the hearing's conclusion, the trial court made oral findings and entered the written Contempt Judgment, holding both Luther and her salon in criminal and civil contempt. As punishment, the trial court ordered that Luther be confined for seven days. The salon was ordered to pay a $500 fine for each of the days the trial court determined the salon violated the order. Additionally, the Contempt Judgment required Defendants, if they wished to purge themselves of contempt, to "publicly express contrition" for their violations "[i]n a manner commensurate with the previous expressions of defiance of the mandate of Dallas County."[13] That same day, Luther was remanded to the custody of the Dallas County Sheriff.

The next day, May 6, Luther filed a petition for writ of habeas corpus and motion for emergency relief in this Court.[14] On May 7, we ordered Luther released on her personal bond, pending resolution of her petition.

---

[13] We note this contrition language subjects the Contempt Judgment to further challenge for lack of specificity. When contempt is imposed, the order must spell out exactly what duties and obligations are imposed and what the contemnor must do to purge the contempt. *See In re Chaumette*, 439 S.W.3d 412, 416 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding) (holding contempt order invalid for failing to specify "in clear and unambiguous language what the contemnor is required to do to purge himself and escape the restraint on his liberty"). The Contempt Judgment's lack of specificity regarding what sort of public apology would suffice to purge the contempt appears to render the Contempt Judgment invalid. Because Luther did not raise this issue, however, our disposition does not turn on the specificity of the Contempt Judgment itself.

[14] The City contends that we should deny Luther's petition because she failed to seek relief first in the court of appeals. This Court and the courts of appeals have concurrent jurisdiction to issue writs of habeas corpus. TEX. GOV'T CODE §§ 22.002(e), 22.221(d). In light of the considerable uncertainty surrounding the multiplicity of orders and regulations issued by public officials throughout the State in the early months of the COVID-19 pandemic, we conclude there was a compelling reason for Luther to file her petition in this Court without first filing in the court of appeals. *See* TEX. R. APP. P. 52.3(e). Although Luther failed to comply with our requirement that a petitioner state the compelling reason in the Statement of Jurisdiction, *see id.*, this technical failure does not divest our Court of jurisdiction to decide the case and issue the writ.

5

## II

Luther argues the temporary restraining order was void because it failed to set forth in specific, unambiguous, and reasonably detailed terms the acts to be restrained and the reasons for its issuance, as required by Texas Rule of Civil Procedure 683.[15] She reasons that because the temporary restraining order underlying the Contempt Judgment was void, so is the Contempt Judgment. We agree.

"Contempt of court is broadly defined as disobedience to or disrespect of a court by acting in opposition to its authority." *Ex parte Chambers*, 898 S.W.2d 257, 259 (Tex. 1995). "Contempt is strong medicine—the alleged contemnor's very liberty is often at stake—and so it should be used only as a last resort." *In re Reece*, 341 S.W.3d 360, 364 (Tex. 2011) (quoting *Ex parte Pink*, 746 S.W.2d 758, 762 (Tex. Crim. App. 1988) (cleaned up)).

"A criminal contempt conviction for disobedience to a court order requires proof beyond a reasonable doubt of: (1) a reasonably specific order; (2) a violation of the order; and (3) the willful intent to violate the order." *Ex parte Chambers*, 898 S.W.2d at 259. An order of contempt can be collaterally attacked through a petition for writ of habeas corpus, *In re Reece*, 341 S.W.3d at 370, and "the relator bears the burden of showing that the contempt order is void," *In re Coppock*, 277 S.W.3d 417, 418 (Tex. 2009). When a relator, after being sentenced to jail, is "released on bond pending review by habeas corpus, there is sufficient restraint of liberty to justify issuance of [a] writ of habeas corpus." *In re Vaughn*, No. 12–09–00143–CV, 2009 WL 3288301, at *2 (Tex.

---

[15] Luther raises three additional points for our review, including constitutional challenges to the underlying COVID-19 orders and regulations, but we do not address them because they would not afford Luther any greater relief. *See United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 483 (Tex. 2017); *see also In re B.L.D.*, 113 S.W.3d 340, 349 (Tex. 2003) ("As a rule, we only decide constitutional questions when we cannot resolve issues on nonconstitutional grounds.").

6

App.—Tyler Oct. 14, 2009, orig. proceeding) (mem. op.) (citing *Ex parte Williams*, 690 S.W.2d 243, 244 (Tex. 1985)); *see also Ex parte Brister*, 801 S.W.2d 833, 835 (Tex. 1990). A writ of habeas corpus will issue if the order of contempt or the underlying order is void. *See Ex parte Shaffer*, 649 S.W.2d 300, 301–02 (Tex. 1983) ("[O]ne may not be held guilty of contempt for refusing to obey a void order.").

A trial court's judgment of contempt "should not rest upon implication or conjecture." *Ex parte Slavin*, 412 S.W.2d 43, 44 (Tex. 1967) (orig. proceeding) (quoting *Plummer v. Superior Court*, 124 P.2d 5, 8 (Cal. 1942)). To support a judgment of contempt, the underlying order must "set forth the terms of compliance in clear, specific and unambiguous terms so that the person charged with obeying the decree will readily know exactly what duties and obligations are imposed upon him." *Ex parte Chambers*, 898 S.W.2d at 260; *see In re Janson*, 614 S.W.3d 724, 727 (Tex. 2020) ("Because criminal contempt is a harsh sanction, we have strictly required clarity in the underlying court orders."). As this Court has stated:

> Where the court seeks to punish either by fine, arrest, or imprisonment for the disobedience of an order or command, *such order or command must carry with it no uncertainty*, and must not be susceptible of different meanings or constructions, but must be in the form of a command, and, *when tested by itself, must speak definitely to the meaning and purpose of the court in ordering*.

*Ex parte Hodges*, 625 S.W.2d 304, 306 (Tex. 1981) (quoting *Ex parte Duncan*, 62 S.W. 758, 760 (Tex. Crim. App. 1901)) (emphasis added). The order must not "requir[e] inferences or conclusions about which reasonable persons might differ." *Ex parte Chambers*, 898 S.W.2d at 260 (emphasis omitted). In other words, to be enforceable by contempt, the order must clearly, specifically, and unambiguously state the conduct required for compliance. A court order that fails to meet these requirements is not "definite and certain enough to support a finding of contempt." *Ex parte Hodges*, 625 S.W.2d at 306.

7

The Contempt Judgment at issue here is premised on a violation of a temporary restraining order. Temporary restraining orders are subject to the requirements of Texas Rule of Civil Procedure 683, in addition to the above principles requiring specificity in orders of any type that may underlie a contempt order. Rule 683 mandates:

> [E]very restraining order shall set forth the reasons for its issuance; shall be specific in terms; [and] shall describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained . . . .

TEX. R. CIV. P. 683. These requirements "are mandatory and must be strictly followed." *InterFirst Bank San Felipe, N.A. v. Paz Constr. Co.*, 715 S.W.2d 640, 641 (Tex. 1986). A temporary restraining order that does not strictly comply with the mandates of Rule 683 is subject to being declared void and dissolved. *Qwest Commc'ns Corp. v. AT&T Corp.*, 24 S.W.3d 334, 337 (Tex. 2000).

The temporary restraining order in this case does not meet these standards. It requires Defendants to cease and desist from conducting in-person services at the salon "in violation of State of Texas, Dallas County, and City of Dallas emergency regulations related to the COVID-19 pandemic." But it nowhere specifies any particular state, county, or city regulation that Luther has violated, is threatening to violate, or is being commanded to stop violating.[16] Nor does it describe with specificity which "in-person services" were restrained, such that performing them would

---

[16] On the contrary, the trial court created more ambiguity about this by making a handwritten interlineation of "/or" after the "and" in the clause "in violation of State of Texas, Dallas County, and City of Dallas emergency regulations related to the COVID-19 pandemic." The final version thus found that, absent restraint, Luther threatened to continue to commit in-person services "in violation of State of Texas, Dallas County, *and/or* City of Dallas emergency regulations." Luther's counsel expressed concern about this insertion, for good reason. We have discouraged the use of "and/or" because the term "inherently leads to ambiguity and confusion." *In re United Scaffolding, Inc*., 377 S.W.3d 685, 689 (Tex. 2012); *see also id.* at 689 n.3 ("The symbol '/' (a slash, or virgule), itself ambiguous and frowned upon, often indicates alternatives. Many style guides translate the phrase 'A and/or B' to mean 'A or B or both.'") (citations omitted). The use of "and/or" further obscured whether the trial court found Defendants violated regulations of only the state, only the county, only the city, or some combination of them.

8

cause Luther to violate the temporary restraining order.  The temporary restraining order should have set this out in reasonable detail, without ambiguity, but it didn't.  Luther could not know without analyzing a multitude of regulations—state, county, and city emergency orders referenced in the temporary restraining order, plus the federal guidelines they referenced—what conduct was prohibited at any given time the temporary restraining order was in effect.

Rule 683 requires that the order itself specify the acts sought to be restrained, without reference to another document.  TEX. R. CIV. P. 683.  Our cases likewise require strict compliance with Rule 683, so that a temporary restraining order itself informs a party, unambiguously and with a reasonable degree of specificity, of the conduct to be restrained.  *See Qwest Commc'ns Corp.*, 24 S.W.3d at 337; *InterFirst Bank*, 715 S.W.2d at 641.  The temporary restraining order's failure to specify—with reasonable detail and clarity and without reference to other documents—the precise conduct prohibited makes the order too uncertain when measured against Rule 683 and therefore too uncertain to enforce by contempt.  *See In re Janson*, 614 S.W.3d at 727 (clarity in orders underlying contempt is strictly required); *Ex parte Slavin*, 412 S.W.2d at 44 (order should "spell out the details of compliance in clear, specific and unambiguous terms"); *see also Qwest Commc'ns Corp.*, 24 S.W.3d at 337 (temporary restraining order that does not strictly comply with Rule 683 is subject to being declared void and dissolved).

Relying on *State v. Cook United, Inc.*, 464 S.W.2d 105 (Tex. 1971), the City argues that strict compliance with Rule 683 is not required when the underlying orders and regulations are preventing a "public nuisance."  In *Cook United*, the defendants appealed from a temporary injunction prohibiting them from violating a statute that barred the sale of certain goods on consecutive weekend days.  *Id.* at 106.  They argued the temporary injunction did not comply with Rule 683 because it failed to state the reasons for its issuance.  *Id.*  The statute at issue in *Cook*

9

*United* specifically declared that a violation was a public nuisance and expressly authorized an injunction to restrain any violation. *Id.* at 107. In that context, we held that "[i]t is a sufficient reason for the interlocutory order that a party is violating *this statute*." *Id.* (emphasis added). *Cook United* does not support the City's argument in the present case. The temporary restraining order here does not cite any statute, order, or regulation explicitly stating that a violation would justify the issuance of an injunction. Instead, it generally cites "State of Texas, Dallas County, and/or City of Dallas emergency regulations related to the COVID-19 pandemic" without specifying which of them Luther violated.

*        *        *

We hold that the temporary restraining order's lack of specificity regarding the conduct to be restrained renders it and the Judgment of Contempt and Order of Confinement void. Therefore, pursuant to Texas Rule of Appellate Procedure 52.8(c), without hearing oral argument, we grant Luther's petition for writ of habeas corpus and order that Luther is and shall remain discharged from custody.

**OPINION DELIVERED**: April 9, 2021

10